**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DAVID DELRE, on Behalf of Himself and all Others Similarly Situated, | Civil Action No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT and DEMAND FOR JURY TRIAL** |
| THE BLUE BUFFALO COMPANY, LTD., | |
| Defendant. | |

Plaintiff, David Delre ("Plaintiff"), by his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action against The Blue Buffalo Company, Ltd. ("Blue Buffalo" or "Defendant") arising out of the marketing and sale of its "Life Protection," "Wilderness," "Freedom," and "Basics" lines of Blue Buffalo brand, ultra-premium cat and dog food products ("Mislabeled Pet Food(s)").[1] Defendant's marketing and promotion of the Mislabeled Pet Food relies on false and misleading claims about the quality, composition, and ingredients of its Mislabeled Pet Food.

---

[1] The Mislabeled Pet Food products include, but are not limited to: Life Protection Indoor Health Chicken & Brown Rice Recipe Cat Food, Life Protection Adult Chicken & Brown Rice Dog Food, Wilderness Adult Chicken Recipe Dog Food, Wilderness Adult Chicken Recipe Dog Food, Wilderness Adult Chicken Recipe Cat Food, Longevity for Adult Cats, Freedom Adult Grain Free Chicken Dog Food, Basics Adult Turkey & Potato Cat Food, Freedom Grain-Free Chicken for Indoor Cats, and Longevity for Adult Dogs.

2.      Specifically, Defendant promotes its Mislabeled Pet Food as containing "Only the Finest Natural Ingredients," with "REAL MEAT First Ingredient," and "NO Chicken/Poultry By-Product Meals," "NO artificial flavors, colors, or preservatives," and "NO corn, wheat or soy."   These representations permeate Defendant's marketing materials and are embodied in Defendant's "True Blue Promise" logo or mark (illustrated below), which is displayed on every label of Blue Buffalo's Mislabeled Pet Food products:



3.      Additionally, Blue Buffalo markets certain pet food products as "Grain Free."



4.      These representations are false and misleading.  In April 2014, a sample of Blue Buffalo pet food products from the "Life Protection," "Wilderness," "Freedom" and "Basics" lines of dog and cat food were tested by an independent laboratory for poultry by-product meal. All of the Blue Buffalo product lines tested contained significant and material amounts of chicken/poultry by-product meals.   Additionally, the testing found significant and material

amounts of corn, rice, grains, and/or artificial preservatives in the products tested, including the product lines marketed as "Grain Free."

5.      As a result of this scheme, Defendant is able to charge substantially higher prices for the Mislabeled Pet Food.   For example, while competing brand, Purina ONE SMARTBLEND "Chicken & Rice Formula Dog Food" costs approximately $39.99 for a 31.1-lb. bag ($1.29 per lb.), Blue Buffalo "Life Protection Formula Chicken & Brown Rice Recipe" dog food costs approximately $59.99 for a 30-lb. bag ($2.00 per lb.) and Blue Buffalo "Wilderness Chicken Adult Dry Dog Food" costs $59.99 for a 24-lb. bag ($2.50 per lb.).  Indeed, Blue Buffalo markets its products as ultra-premium pet food and charges a significantly higher price than the pet food products they use for comparison purposes on their website.[2]

6.      Plaintiff seeks relief in this action individually, and on behalf of all purchasers of Mislabeled Pet Food products in the United States, for unjust enrichment, breach of express warranty, common law fraud, and violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.*; the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act, N.J. Stat. Ann. §§ 56:12-14 to 56:12-18, *et seq.*, and the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*

## THE PARTIES

7.      Plaintiff is a citizen of the State of New Jersey.  Plaintiff purchased a variety of the Mislabeled Pet Foods for approximately two years, including Life Protection Adult Chicken & Brown Rice Dog Food, which was represented as containing "NO Chicken/Poultry By-Product Meals," "NO artificial flavors, colors, or preservatives," and "NO corn, wheat or soy." Plaintiff purchased the Mislabeled Pet Foods, in 30-pound net weight bags, from retail stores in

---

[2] *See* http://bluebuffalo.com/dog-food-comparison/test-results.

New Jersey for approximately $54.00.  Plaintiff read Blue Buffalo's misrepresentations that the Mislabeled Pet Food contains "NO Chicken/Poultry By-Product Meals," "NO artificial flavors, colors, or preservatives," and "NO corn, wheat or soy," and relied on such misrepresentations in deciding to purchase the Mislabeled Pet Food.  Plaintiff would not have purchased the Mislabeled Pet Food, or would not have purchased it on the same terms, but for Blue Buffalo's misrepresentations.

8.      Defendant is a Delaware corporation with its corporate headquarters located at 11 River Road, Wilton, Connecticut, 06897.  Blue Buffalo manufacturers, markets, distributes and sells various pet food products nationwide.  Founded in 2002, Blue Buffalo claims to be the leader in premium, quality, all-natural pet foods.  As a result of strong advertising and marketing programs, Blue Buffalo has experienced double and triple-digit annual growth over the past several years.  In 2013 alone, Defendant spent more than $50 million in advertising.  Defendant sells its products in leading national pet specialty chains, including PetSmart, Petco and Pet Supplies Plus, as well as in more than 10,000 neighborhood stores nationwide.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from that of Defendant.

10.      This Court has personal jurisdiction over Defendant because Blue Buffalo maintains its principal headquarters in Connecticut and the false and misleading statements at issue in this case emanated from Connecticut.

11.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this District.  Furthermore, Blue Buffalo maintains its principal place of business in this District, and Blue Buffalo distributed, advertised and sold the Mislabeled Pet Food, which is the subject of the present Complaint, in this District.

### FACTS COMMON TO ALL CLAIMS

**A.**     **Premium Pet Food**

12.     In 2012, Mintel Group Ltd., a global market research firm, estimated the U.S. retail market for pet food to be worth nearly $19.7 billion, with a forecast for 14% growth by 2017.  Cat and dog foods accounted for over 90 percent of the U.S pet food market in 2011 alone.

13.     Given the sheer size of the pet food market, consumers are presented with a wide range of pet food options, varying in the quality of ingredients, formula and nutritional value.

14.     Premium pet foods have the fastest growth rate of any pet food products.  This dramatic growth has largely been fueled by baby boomers and so-called empty nesters.  These groups, which generally have high levels of disposable income, are willing to spend more for their pets.

15.     Furthermore, young professionals have begun spending more on upscale pet products, as pet ownership is frequently taking the place of having children, at least temporarily.  These consumers, with high and/or dual incomes, care for their pets as if they were their children.  This anthropomorphic trend has led U.S. pet owners to become more concerned about what their pets eat, since most people would not feed a cherished family member scraps.

16.     With growing overall health-consciousness among consumers in the U.S., many consumers are purchasing healthier foods for themselves and their families.  This trend has carried over into the pet world as consumers want the same healthy foods for their pets.

17.     Although pet foods vary in the quality of ingredients, formula and nutritional value, premium or ultra-premium pet foods typically have higher standards with respect to each of these important variables.

18.     Specifically, ultra-premium pet foods typically have higher quality protein sources, no artificial dyes, and added antioxidants and vitamins.

19.     Proteins are the primary building blocks of brain, muscle, fur, and skin.  Proteins affect metabolism, regulate pH, and are used in the production of antibodies, enzymes, hormones, and body tissues.  Proteins can be turned into fat and stored, or can be burned as calories.  If a pet's body does not receive enough protein, or if the nutrients are not absorbed properly, their immune system becomes weak.

20.     Protein can come from a variety of sources, some much more healthy than others.  Meat protein is an optimal source of essential amino acids.  As such, consumers of ultra-premium pet foods look for protein derived from quality meat and poultry sources.[3]  Many pet foods, especially the economy brands, use corn, wheat, gluten, soy, meat and bone meal as a major source of protein, but these are inferior sources of protein for pets.  Consumers of premium pet foods look for diets with quality meat or poultry sources making up at least 3 or 4 of the first 6 ingredients listed on product packaging.

---

[3]  Additionally, the nutritional value "per kibble" is higher than most economy brands, meaning a pet will have to eat less of a premium brand to get the same nutrition.  Moreover, because pets need to eat less of a premium brand pet food to get the nutrition they need, pets on a diet of premium brand pet foods produce less waste than pets on a diet of lower quality economy brands.

21.     In contrast, many low quality pet foods are made with chicken/poultry by-product meals.  Manufacturers of low quality pet foods use by-product meals because it is less expensive.  By-product meals often contain animal necks, heads, feet, intestines, and other internal organs which are not quality sources of food for pets.

22.     Therefore, consumers of premium pet foods look to buy products containing named meats, such as chicken, as the first ingredient, rather than the less desirable "chicken by-product meal."  Incidentally, these ultra-premium pet foods tend to be higher priced with larger mark-ups, a factor which has benefited industry revenue.  As Defendant acknowledges, "[p]oultry or chicken by-product meals cost a lot less than meals made from whole meat."  Blue Buffalo tells consumers that it "is well worth it to know exactly what's in our food."

**B.     False And Misleading Marketing Of The Mislabeled Pet Food**

23.     Defendant has engaged in a massive, uniform marketing and advertising campaign designed to convince consumers that the Mislabeled Pet Foods contain premium, high quality natural ingredients that provide "Superior Nutrition."  Defendant then disseminated materially false and misleading statements which represent, both expressly and by implication, that the Mislabeled Pet Food products contain only the finest ingredients and "NO Chicken/Poultry By-Product Meals," "NO artificial flavors, colors, or preservatives," and "NO corn, wheat or soy."  These false and misleading statements were disseminated in advertising, marketing, and promotional materials, including on Blue Buffalo's website, product packaging, print ads, television ads and other marketing materials designed to induce consumers to purchase the Mislabeled Pet Food.

24.     Fundamental to Defendant's scheme is its purported "Blue Buffalo Nutrition and Ingredient Philosphy," which emphasizes that "BLUE foods consist of the finest natural

ingredients combined in perfect balance for superior nutrition," including high quality protein

sources as its first ingredient, the best sources of fats, quality whole grains, and natural vitamins,

minerals and fibers.    More specifically, Defendant touts that its products are not only

nutritionally superior, but that they are free from less desirable ingredients including

chicken/poultry by-product meals, artificial flavors, colors, and preservatives, and corn, wheat

and soy.  For example, Defendant's marketing statements include the following:

> Of equal importance is the quality of the ingredients from which these nutrients
> are derived.  For example, real chicken meat is a higher quality protein source
> than chicken or poultry by-product meals; chicken fat is considered a higher
> quality source of essential fatty acids than generic "animal fats."   Subtle
> differences like these may determine whether a pet food brand's ingredients are as
> healthy as they claim to be.

****

> Some brands cut corners by using protein from chicken or poultry by-product
> meals, or even worse, from corn or soy-not BLUE."

****

> **Corn, Wheat or Soy Proteins (Glutens)**
>
> All of these are less complete and lower quality sources of protein and are common
> allergens in pets. Grain proteins do not contain the complete amino acid profiles specific
> for dogs or cats and are not as easily digestible as meat-based proteins. Many pet food
> companies use the less expensive glutens to increase protein levels without the complete
> amino acid benefits of using more expensive meat, poultry or fish proteins.
>
> Simply put, these ingredients are cheaper, lower in nutrition, and things we would never
> include in a BLUE recipe.
>
> **Artificial Colors, Flavors, or Preservatives**
>
> Preservatives like BHA, BHT, ethoxyquin, propylene glycol provide no nutritional value
> and have been associated with possible side effects. Some pet food brands resort to
> artificial colors and flavors in an attempt to make food look and taste better. We don't.

http://www.bluebuffalo.com/nutrition (last visited May 21, 2014).

25.    This philosophy is embodied in Defendant's "True Blue Promise" mark, which is

prominently displayed in its advertising, including throughout its website and on the label on all

of its Mislabeled Pet Food products.  The "True Blue Promise" represents the Mislabeled Pet Food contains only the finest natural ingredients and "NO Chicken/Poultry By-Product Meals," "NO artificial flavors, colors, or preservatives," and "NO corn, wheat or soy."



http://bluebuffalo.com/best-dog-food  (last visited May 8, 2014).

26.     Similarly, Defendant's "True Blue Promise" is prominently displayed on the packaging of all Blue Buffalo brand pet food, including the Mislabeled Pet Food.




27.     Similarly, Blue Buffalo makes these ingredient claims on the front of the packaging of its Mislabeled Pet Food.  For example, the top front of Defendant's Life Protection Formula Chicken & Brown Rice Recipe for Adult Dogs states, "No chicken or poultry by-product meals;" "No corn, wheat or soy;" "No artificial preservatives;" "No artificial flavors":



28.     Moreover, Defendant's website touts the benefits of the Mislabeled Pet Food, which it again claims contain "no chicken or poultry by-product meals."   Specifically, the Frequently Asked Questions ("FAQ") section of Blue Buffalo's website states:

**Does BLUE dog food or BLUE cat food contain chicken or poultry by-product meals?**

BLUE pet food contains no chicken or poultry by-product meals. What's more, we do not use corn, wheat or soy in any of our recipes.

▲ back to top

http://bluebuffalo.com/health/faq

29.    Furthermore, many of Defendant's advertisements feature its "True Blue Test," where Blue Buffalo invites consumers to visit its website to compare consumers' current pet foods, manufactured by other well-known pet food manufacturers, with Blue Buffalo brand products and to "see if ingredients in your pet's food are as wholesome as you think."  According to Defendant "[t]he goal of the True BLUE Test is to give you a better understanding of what really makes up a high-quality [pet] food. And as the results show, many leading brands probably fall short of what you should expect from your [pet's] food."  Consumers who take the "True Blue Test" are met with a comparison chart (reproduced below) highlighting the elements of the "True Blue Promise" touting that Blue Buffalo products "Always ha[ve] Real Meat as the First Ingredient", "Always Include[] Veggies and Fruits", "Never Ha[ve] Chicken (or Poultry) By-Product Meats," "Never Ha[ve] Artificial Colors, Flavors or Preservatives," and "Never Ha[ve] Corn Wheat or Soy."



| Roll over or touch to expand | ALWAYS Has Real Meat as the First Ingredient | ALWAYS Includes Veggies and Fruit | NEVER Has Chicken (or Poultry) By-Product Meals | NEVER Has Artificial Colors, Flavors or Preservatives | NEVER Has Corn, Wheat or Soy |
|---|---|---|---|---|---|
| BLUE | ✓ | ✓ | ✓ | ✓ | ✓ |
| Beneful | — | — | — | — | — |
| Bil·Jac | — | — | — | ✓ | — |
| Eagle Pack | — | — | ✓ | ✓ | — |
| Eukanuba | — | — | — | ✓ | — |
| IAMS | — | ✓ | — | ✓ | — |
| Nutro MAX | — | — | ✓ | ✓ | — |
| NATURAL CHOICE | — | — | ✓ | ✓ | — |
| Pedigree | — | — | — | — | — |
| Be Happy | — | — | — | — | — |
| Dog Chow | — | — | — | — | — |
| ONE | ✓ | — | — | ✓ | — |
| PRO PLAN | — | — | — | ✓ | — |
| ROYAL CANIN | — | — | ✓ | ✓ | — |
| SCIENCE DIET | — | — | ✓ | ✓ | — |

For detailed comparison information, <u>click here</u>.

http://bluebuffalo.com/dog-food-comparison/test-results.

30.     These representations, however, are false and misleading.  In early 2014, upon information and belief, one of Blue Buffalo's competitors engaged an independent laboratory to conduct testing to determine the ingredient make-up of a number of Blue Buffalo pet food products.  The scientific testing revealed that, contrary to Blue Buffalo's True Blue Promise that its products do not contain chicken/poultry by-product meals, the Mislabeled Pet Food actually contains a substantial percentage of chicken/poultry by-product meals, comprising upwards of 20% of the product weight of some of the Blue Buffalo products tested.

31.     These test results also contradict Blue Buffalo's representations concerning its proprietary "LifeSource Bits" found in the Mislabeled Pet Food.

32.     Blue Buffalo claims that the exclusive "LifeSource Bits" that are mixed in with its kibble are "wholesome" and "a precise blend of vitamins, minerals and antioxidants."   For example on the FAQ section of its website, Blue Buffalo represents:

**How are BLUE products different from other healthy pet foods?**

BLUE dog foods and BLUE cat foods contain the finest natural ingredients, providing wholesome nutrition for our four-legged family members. Plus, only BLUE includes LifeSource Bits, a precise blend of nutrients and antioxidants.

▲ back to top

**What are the small, dark, round pieces mixed with the kibble in BLUE food?**

These are our exclusive LifeSource® Bits. LifeSource Bits contain a precise blend of vitamins, minerals and antioxidants selected by holistic veterinarians and animal nutritionists. These include ingredients that help support your pet's immune system, support their specific life stage requirements **and help maintain a healthy oxidative balance**.

Plus, we "cold form" our LifeSource Bits to minimize the loss of potency that occurs in many vitamins and nutrients when exposed to extreme heat. This is an important difference between BLUE and other brands, because other brands process their food with high heat. Heat can destroy the potency of some nutrients, particularly antioxidants, by up to 75%.

Learn more about LifeSource Bits

▲ back to top

http://bluebuffalo.com/health/faq.

33.     These representations are similarly misleading, as Blue Buffalo's proprietary "LifeSource Bits" are a source of the ingredients premium pet food consumers seek to avoid. Upon information and belief, the independent laboratory testing completed in April 2014 to

determine the ingredient make-up of a number of Blue Buffalo pet food products revealed that "LifeSource Bits" also contained chicken/poultry by-product meal and corn.

34.     Moreover, Blue Buffalo markets its "Freedom" and "Wilderness" line of Mislabeled Pet Food as being "Grain Free."



**BLUE Freedom® Grain-Free Chicken Recipe**
for Indoor Cats

Some cats just don't do well with grain-based foods. That's why we created BLUE Freedom dry food for indoor cats. BLUE Freedom contains no grains, so it has no glutens. Glutens can trigger allergic reactions in some cats.

**A Grain-Free Food Made With The Finest Natural Ingredients.**
BLUE Freedom is made with the finest natural ingredients—ingredients chosen with great care by our animal nutritionists, providing your cat with the right balance of high-quality protein and complex carbohydrates.

- Deboned chicken is always the first ingredient.
- Whole carrots, sweet potatoes and peas.
- Blueberries and cranberries.
- NO chicken or poultry by-product meals, NO corn, wheat or soy and nothing artificial.

**BLUE Freedom for indoor cats is formulated to meet their special needs:**

- A protein-rich recipe that includes cranberries and Vitamin C helps keep the urinary tract functioning properly.
- The right blend of beneficial natural dietary fibers help push hairballs through the digestion process and minimize litter box odor.
- Carefully balanced calories in our proteins and fat help maintain an ideal, healthy body weight.

http://bluebuffalo.com/cat-food/freedom-indoor?pf=1&type=dry&animal=cat



**BLUE Wilderness®
Indoor Chicken Recipe**
*for Adult Cats*

Inspired by the diet of the lynx, a tireless hunter and wild relative of our domesticated feline friends, high-protein BLUE Wilderness Indoor cat food contains a higher concentration of the delicious chicken you know she'll love. Plus, it's formulated specifically to help meet the important needs of cats that live indoors.

And because BLUE Wilderness is made with no grains, it's also an ideal choice if you prefer to feed your cat a gluten-free diet.

Available in 2, 5 & 11 lb. Bags

http://bluebuffalo.com/cat-food/wilderness-indoor?pf=1&type=dry&animal=cat

35.    Not only did independent scientific testing determine the Mislabeled Pet Foods contain chicken/poultry by-product meal and corn, the testing also found the Mislabeled Pet Foods contain rice hulls, which do not belong in a "grain-free" product.

36.    Blue Buffalo goes as far as to make claims implying the Mislabeled Pet Foods are of the same quality as human-grade food.  Indeed, in its advertising and on its packaging, Blue Buffalo makes the claim "Love them like Family. Feed them like Family."  However, the low quality ingredients in the Mislabeled Pet Food, such as chicken/poultry by-product meals, are in no way fit for human consumption.

37.     Blue Buffalo has made similar, deceptive claims in the past.   In 2008, a competitor of Blue Buffalo challenged Blue Buffalo's claim that its pet food products contain "no animal by-products" before the Better Business Bureau's National Advertising Division ("NAD").   That challenge resulted in the NAD recommending Blue Buffalo remove the "no animal by-product" claims from pet foods containing fish meal, lamb meal and/or liver.   *See* NAD Case #4892 at 10-11, decided July 31, 2008.   After the 2008 NAD decision, Blue Buffalo replaced the "no animal by-products" claims with its "no chicken/poultry by-product meals" claims.

38.     Thus, since at least as early as 2008, Blue Buffalo engaged in a uniform marketing and advertising program representing that its Mislabeled Pet Food contained "NO Chicken/Poultry By-Product Meals," "NO artificial flavors, colors, or preservatives," and "NO corn, wheat or soy," and/or were "Grain Free," which was designed to induce consumers to purchase the Mislabeled Pet Food in reliance upon these representations.   Not only were these representations contained within Blue Buffalo's own marketing materials, advertisements, packaging, package inserts and website, but they were also delivered to retailers in the form of marketing materials and specifications which were reprinted, verbatim, to consumers.

39.   For example, on Petco's retail website, Petco maintains a web page dedicated to the Blue Buffalo brand, which prominently repeats Defendant's deceptive marketing claims.



http://www.petco.com/petco_page_pc_blue-protection.aspx (last accessed May 21, 2014).



http://www.petco.com/petco_page_pc_blue-why.aspx (last accessed May 21, 2014).

40.   Similarly, Blue Buffalo states on Amazon.com:

- Deboned chicken is always the first ingredient
- Whole carrots, sweet potatoes and peas
- NO chicken or poultry by-product meals, NO corn, wheat or soy and nothing artificial

http://www.amazon.com/gp/product/B008EXEMOU/ref=pd_lpo_k2_dp_sr_2?pf_rd_p=1535523
722&pf_rd_s=lpo-top-stripe-
1&pf_rd_t=201&pf_rd_i=B003P9XGDG&pf_rd_m=ATVPDKIKX0DER&pf_rd_r=1JB96JYD
C2B7DK34BGH4 (last accessed May 21, 2014).

41.     Moreover, many of Defendant's national television commercials criticize "big

name" pet food manufacturers as being dishonest because their products contain chicken by-

product meals and other inferior ingredients such as corn.  The commercials go on to tout

Defendant's claims that the Mislabeled Pet Foods contain superior ingredients and sources of

protein.   Defendant prominently displays these commercials on its "Blue TV" webpage.

http://www.bluebuffalo.com/tv-commercials (last accessed May 21, 2014).



42.     All of Defendant's false and/or misleading claims challenged herein relate to

matters that were material and important to consumers' purchasing decisions, as they concern

Blue Buffalo's representations regarding the quality, composition and value of its Mislabeled Pet

Food.

43.     Not surprisingly, customers mislead by Blue Buffalo's mislabeling of its pet food products cannot conduct laboratory testing and scientific analysis at the point of sale to determine if the products actually contain lower quality ingredients than represented on product packaging.

44.     Defendant's marketing and promotional materials are intended to, and did, induce Plaintiff and members of the Class, as defined below, to rely upon those representations that the Mislabeled Pet Foods contained only the finest natural ingredients and "NO Chicken/Poultry By-Product Meals," "NO artificial flavors, colors, or preservatives," "NO corn, wheat or soy," and/or were "Grain Free."  These representations were a substantial factor in causing Plaintiff and members of the Class to purchase Mislabeled Pet Foods.

45.     At the time members of the Class purchased the Mislabeled Pet Food, they were unaware of the fact that the Mislabeled Pet Foods contained material and significant amounts of chicken/poultry by-product meals, artificial flavors, colors and preservatives, as well as corn, wheat or soy.  If members of the Class had been aware of the true facts concerning the Mislabeled Pet Food, they would not have purchased the products, or would not have been willing to purchase the products on the same terms.

46.     Plaintiff and members of the Class have been injured in fact and have suffered ascertainable, out-of-pocket losses.  Plaintiff and members of the Class therefore seek a refund and/or rescission of the transaction and all further equitable and injunctive relief as provided by applicable law.

## **CLASS ACTION ALLEGATIONS**

47.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 (a), (b)(1), (b)(2), and (b)(3) on behalf of all persons in the United States who, within the relevant statute of limitations period, purchased the Mislabeled Pet Food (the "Class").

48.     Plaintiff also seeks to represent a subclass defined as all members of the Class who purchased Mislabeled Pet Food in New Jersey (the "New Jersey Subclass").

49.     Members of the Class and New Jersey Subclass (collectively, "Class") are so numerous that their individual joinder herein is impracticable.  Members of each of these classes number in the thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication and through the distribution records of Blue Buffalo and third party retailers and vendors.

50.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

(a)     whether Blue Buffalo was unjustly enriched by its conduct;

(b)     whether Blue Buffalo breached an express warranty made to Plaintiff and the Class;

(c)     whether Blue Buffalo advertises or markets Mislabeled Pet Food in a way that is false or misleading;

(d)     whether the Mislabeled Pet Food fails to conform to the representations which were published, disseminated and advertised to Plaintiff and the Class;

(e)      whether Blue Buffalo concealed from Plaintiff and the Class that the Mislabeled Pet Food did not conform to its stated representations;

(f)      whether, by the misconduct set forth in this Complaint, Blue Buffalo has engaged in unfair, fraudulent or unlawful business practices with respect to the advertising, marketing and sale of the Mislabeled Pet Food;

(g)      whether Blue Buffalo violated Connecticut's Unfair Trade Practices Act;

(h)      whether Blue Buffalo violated the New Jersey Consumer Fraud Act;

(i)      whether Blue Buffalo's actions as described above violate the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act;

(j)      whether Class members suffered an ascertainable loss as a result of Blue Buffalo's misrepresentations; and

(k)      whether, as a result of Blue Buffalo's misconduct as alleged herein, Plaintiff and Class members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

51.      Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class have been similarly affected by Blue Buffalo's wrongful conduct.  Plaintiff has no interests antagonistic to the interests of the other members of the Class.  Plaintiff and all members of the Class have sustained economic injury arising out of Blue Buffalo's violations of common and statutory law as alleged herein.

52.      Plaintiff is an adequate representative of the Class because his interest does not conflict with the interests of the Class members he seeks to represent, he has retained counsel competent and experienced in prosecuting class actions, and he intends to prosecute this action

vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

53.      The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Blue Buffalo's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Blue Buffalo's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### (Unjust Enrichment)

54.      Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

55.      Plaintiff brings this claim individually and on behalf of the members of the Class, and the New Jersey Subclass, against Blue Buffalo.

56.      "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether [Blue Buffalo] was *unjustly* enriched.  At the core of each state's law are two fundamental elements – that [Blue Buffalo] received a benefit from the plaintiff and it would be inequitable for [Blue Buffalo] to retain that benefit without

compensating the plaintiff.  The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009), *quoting Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007).

57.     "Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn," *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. at 58, New Jersey law applies to those claims.

58.     Plaintiff, Class members, and New Jersey Subclass members conferred a benefit on Blue Buffalo by purchasing the Mislabeled Pet Food.

59.     Blue Buffalo has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Mislabeled Pet Food, which retention under these circumstances is unjust and inequitable because Blue Buffalo misrepresented that the Mislabeled Pet Foods contained "Only the Finest Natural Ingredients," with "REAL MEAT First Ingredient," and "NO Chicken/Poultry By-Product Meals," "NO artificial flavors, colors, or preservatives," and "NO corn, wheat or soy," when in fact they do, which caused injuries to Plaintiff and Class members because: (a) they would not have purchased the Mislabeled Pet Foods on the same terms if the true facts concerning their actual composition had been known; and (b) they paid a price premium due to the mislabeling of the Mislabeled Pet Foods.

60.     Because Blue Buffalo's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Blue Buffalo must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court.

## COUNT II

### (For Breach of Express Warranty)

61.     Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

62.     Plaintiff brings this claim on behalf of the nationwide Class under Connecticut law and on behalf of a New Jersey Subclass under New Jersey law.

63.     Blue Buffalo, as the designer, manufacturer, marketer, distributor or seller, expressly warranted that the Mislabeled Pet Foods contained "Only the Finest Natural Ingredients," with "REAL MEAT First Ingredient," and "NO Chicken/Poultry By-Product Meals," "NO artificial flavors, colors, or preservatives," and "NO corn, wheat or soy."

64.     In fact, contrary to Blue Buffalo's "True Blue Promise," the Mislabeled Pet Foods contain significant amounts of chicken/poultry by-product meals, corn, other grains, and artificial preservatives.

65.     Plaintiff and the Class were injured as a direct and proximate result of Blue Buffalo's breach because:  (a) they would not have purchased the Mislabeled Pet Foods on the same terms if the true facts regarding the composition and ingredients of the products had been known; (b) they paid a price premium due to the mislabeling of the Mislabeled Pet Foods; and (c) the Mislabeled Pet Foods did not have the quality, composition, functionality or value as promised.

## COUNT III

### (Common Law Fraud)

66.     Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

67.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

68.     Defendant made false representations about the Mislabeled Pet Foods as statements of fact, including that the products contained "Only the Finest Natural Ingredients," with "REAL MEAT First Ingredient," and "NO Chicken/Poultry By-Product Meals," "NO

artificial flavors, colors, or preservatives," and "NO corn, wheat or soy."  These statements were material because they are the only reasons a consumers would pay a price premium for the Mislabeled Pet Foods.

69.   These representations are false because the Mislabeled Pet Foods contain significant and material amounts of chicken/poultry by-product meals, corn, other grains, and artificial preservatives.

70.   Plaintiff and Class members were exposed to these false and misleading statements in numerous advertisements, including product packaging, at the time immediately prior to their purchase of the Mislabeled Pet Foods.

71.   Defendant made these statements with knowledge of their falsity and the intent to deceive Plaintiff and Class members and induce them to purchase the Mislabeled Pet Foods.

72.   Defendant also omitted material facts from Plaintiff and Class members, in that it failed to disclose that the Mislabeled Pet Food contained chicken/poultry by-product meals, artificial flavors, colors, and preservatives, and corn, wheat or soy.  Defendant had a duty to disclose such facts because, as the manufacturer of the Mislabeled Pet Food, Blue Buffalo had exclusive knowledge of these material facts, which were not known to Plaintiff and the Class.

73.   Plaintiff and Class members justifiably and reasonably relied upon Defendant's false and misleading representations in making their purchases and suffered harm as a result of their reliance, as they had no way of knowing that Defendant's statements were false and misleading.

74.   Plaintiff and Class members suffered damages and an ascertainable loss caused by Blue Buffalo's misrepresentations because:  (a) they would not have purchased Mislabeled Pet

Foods on the same terms if the true facts concerning their actual composition had been known; and (b) they paid a price premium due to the mislabeling of the Mislabeled Pet Foods.

## COUNT IV

### (Violations of Connecticut General Statutes §§42-110a, *et seq*. The Connecticut Unfair Trade Practices Act ("CUTPA"))

75.     Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

76.     Plaintiff brings this action individually and on behalf of the nationwide Class under Connecticut law.

77.     The actions of Blue Buffalo alleged herein were carried out in the conduct of its primary business described above, which includes "the offering for sale … [of a] commodity or thing of value in this state." Conn. Gen. Stat. § 42-110a(4).    Thus, the actions of Defendant occurred "in the conduct of any trade or commerce."    Conn. Gen. Stat. § 42-110b(a).

78.     The actions of Blue Buffalo alleged herein have violated CUTPA in that they constituted unfair acts and/or deceptive practices prohibited by CUTPA because Blue Buffalo is in a position to actually know, or should know, that its True Blue Promise is false, *i.e.*, its Mislabeled Pet Foods contain significant amounts of chicken/poultry by-product meals, corn, other grains, and artificial preservatives. Thus, Defendant's acts and/or practices as alleged herein were unfair and/or deceptive, in part, because:

> a)  they violate Conn. Agencies Regs. § 42-110b-18, which prohibits false advertising, in that Blue Buffalo made untrue and misleading nutritional and ingredient statements relating to the Mislabeled Pet Foods, made with intent to induce consumers to purchase the Mislabeled Pet Foods, regarding which

statements Defendant knew, or which, by the exercise of reasonable care should have known, to be untrue and misleading;

b) they offended public policy or within at least the penumbra of common laws or statutes and/or other established concepts of unfairness, were immoral, unethical, oppressive or unscrupulous; and

c) they were done with a reckless indifference to the rights of Plaintiff and the Class or were an intentional and wanton violation of those rights.

79.     Plaintiff and the Class suffered ascertainable loss of money or property as a result of Blue Buffalo's unfair acts and/or deceptive practices – specifically, Plaintiff and Class members suffered injury as a result of Blue Buffalo's false advertising because: (a) they would not have purchased the Mislabeled Pet Foods on the same terms if the true facts concerning their actual composition had been known; and (b) they paid a price premium due to the mislabeling of the Mislabeled Pet Foods.  Because of Blue Buffalo's false advertising, Plaintiff and the Class did not receive what they bargained for.  Blue Buffalo's conduct is the sole proximate cause of the harm suffered by Plaintiff and the Class.

80.     Upon filing the instant Complaint, Plaintiff shall mail a copy of the Complaint to the Attorney General and the Commissioner of Consumer Protection.

## COUNT V

**(Violation of the New Jersey Consumer Fraud Act "NJCFA," N.J.S.A. § 56:8-1, *et seq.*)**

81.     Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

82.     Plaintiff brings this claim on behalf of the New Jersey Subclass under New Jersey law.

83.     Defendant, by selling, distributing, designing, packaging and marketing the Mislabeled Pet Food, as set forth above, engaged in deceptive practices and acts in violation of the NJCFA.

84.     Defendant used unconscionable commercial practice, deception, fraud, false pretense, false promises, misrepresentations, or the knowing, concealment, suppression, or omission of any material fact with intent that others, including Plaintiff and members of the New Jersey Subclass, rely upon such concealment, suppression or omission, in connection with the sale and advertisement of the Mislabeled Pet Foods, which are "merchandise" under the NJCFA.

85.     Blue Buffalo misrepresented that the Mislabeled Pet Foods were made with "Only the Finest Natural Ingredients," with "REAL MEAT First Ingredient," and "NO Chicken/Poultry By-Product Meals," "NO artificial flavors, colors, or preservatives," and "NO corn, wheat or soy," when, in fact, they contain significant amounts of chicken/poultry by-product meals, corn, other grains, and artificial preservatives.

86.     Defendant engaged in an unconscionable commercial practice because Defendant knew the contents and ingredients in each of the Mislabeled Pet Foods and therefore Defendant's sale and labeling of the Mislabeled Pet Food demonstrates a lack of good faith, and disregard for honesty and fair dealing.

87.     Defendant engaged in acts of omission, including, but not limited to knowing concealment, suppression and omission of material facts, including the true composition of and ingredients in the Mislabeled Pet Food.  Defendant knew the contents and ingredients in each of the Mislabeled Pet Foods and knew the Mislabeled Pet Foods were manufactured with chicken/poultry by-product meals, artificial flavors, colors, and preservatives, and corn, wheat and soy.  Nonetheless, Defendant knowingly concealed, suppressed and omitted the true contents

of the Mislabeled Pet Foods, given consumers' desire to feed their pets higher quality ingredients.   Defendant intended that consumers rely upon its incomplete, misleading representations in purchasing the products.

88.   Plaintiff and Class members suffered an ascertainable loss caused by Blue Buffalo's misrepresentations, unconscionable commercial practices, and knowing omissions because:  (a) they would not have purchased Mislabeled Pet Foods on the same terms if the true facts concerning their actual composition had been known; and (b) they paid a price premium due to the mislabeling of the Mislabeled Pet Foods.

## COUNT VI

### (Violations of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act "TCCWNA," New Jersey Stat. §§ 56:12-14 to 56:12-18)

89.   Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

90.   Plaintiff brings this claim on behalf of the New Jersey Subclass under New Jersey law.

91.   The TCCWNA provides:

> No seller…shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign …which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

92.   The labels and marketing materials for the Mislabeled Pet Foods are written consumer warranties, notices and/or signs offered, given and/or displayed to consumers and prospective consumers subject to the TCCWNA.

93.   Plaintiff and Class members are "consumer[s] or prospective consumer[s]" within the meaning of N.J.S.A. § 56:12-15.

94.   Defendant is a "seller" within the meaning of N.J.S.A. § 56:12-15.

95.   The rights of consumers to truthful and accurate statements on the labels and marketing materials for the Mislabeled Pet Foods, as well as the right to avoid deception caused by false and misleading statements on such labels and marketing materials, are "clearly established legal rights" under N.J.S.A. § 56:8-2.

96.   The responsibility of a seller to refrain from the employment of any unconscionable commercial practice, deception, fraud, false pretense, or misrepresentation, and to refrain from the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of merchandise, and to refrain from selling products with labels that make false statements about the products, are clearly established under N.J.S.A. § 56:8-2.

97.   Blue Buffalo violated the TCCWNA by misrepresenting that the Mislabeled Pet Foods contained "Only the Finest Natural Ingredients," with "REAL MEAT First Ingredient," and "NO Chicken/Poultry By-Product Meals," "NO artificial flavors, colors, or preservatives," and "NO corn, wheat or soy."

98.   Pursuant to N.J.S.A. § 56:12-17, Blue Buffalo is liable to Plaintiff and the New Jersey Subclass for civil penalties or for actual damages, or both, at the election of the consumer. In addition, Plaintiff is entitled to reimbursement for all reasonable attorneys' fees and court costs incurred as a result of bringing this action.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Blue Buffalo as follows:

A.      For an order certifying the nationwide Class and the New Jersey Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class Representative and his attorneys as Class Counsel to represent the Class members;

B.      For an order declaring that Blue Buffalo's conduct violates the statutes referenced herein;

C.      For an order finding in favor of the Plaintiff, the nationwide Class, and the New Jersey Subclass on all counts asserted herein;

D.      For an order awarding compensatory, civil penalties, treble, and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiff and the Class and the New Jersey Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable in this action.

Dated: May 28, 2014

Attorneys for Plaintiff

By:____/s/  Karen M. Leser-Grenon____
            Karen M. Leser-Grenon

James E. Miller (ct21560)
Karen Leser-Grenon (ct23587)
Laurie Rubinow (ct27243)
Shepherd, Finkelman, Miller & Shah, LLP
65 Main Street
Chester, Connecticut 06412
Tel/ 860-526-1100

Fax/  866-300-7367

Antonio Vozzolo
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel/ 212- 983-9330